UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT P.,

                   Plaintiff,               **DECISION AND ORDER**

      v.
                                     1:23-CV-00975 EAW

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Robert P. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on February 24, 2021, and February 26, 2021, respectively. (Dkt. 5 at 20, 291-97, 298-304).[1] In his applications,

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Plaintiff alleged disability beginning October 14, 2014.  (*Id.* at 20, 291, 298).  Plaintiff later amended his alleged onset date to June 20, 2019.  (*Id.* at 20, 49, 319).  Plaintiff's applications were initially denied on April 23, 2021.  (*Id.* at 20, 146-96).   A telephone hearing was held before administrative law judge ("ALJ") Kim Griswold on April 28, 2022.  (*Id.* at 44-74).  On July 19, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 20-38).  Plaintiff requested Appeals Council review; his request was denied on July 21, 2023, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 5-12).  This action followed.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the

Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g).   To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

## I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2020.  (Dkt. 5 at 23).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 20, 2019, the amended alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: obesity and degenerative changes of the cervical and lumbosacral spine.  (*Id.*).  The ALJ

further found that Plaintiff's medically determinable impairments of aortic valve stenosis, parotiditis, non-insulin dependent diabetes mellitus, gastroesophageal reflux disorder and diverticulosis, hypertension, knee arthritis, and bladder cancer were non-severe. (*Id*. at 23-25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 26). The ALJ particularly considered the criteria of Listings 1.15 and 1.18 in reaching her conclusion. (*Id.* at 26-27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that:

> [Plaintiff] can stand and walk for 4 hours in an 8 hour workday. [Plaintiff] can sit for 8 hours in an 8 hour workday. [Plaintiff] can perform occasional stooping, crouching, crawling, kneeling, and climbing ramps and stairs. [Plaintiff] cannot climb ladders, ropes and scaffolds. [Plaintiff] cannot balance as defined in the DOT/SCO. [Plaintiff] cannot tolerate exposure to hazards, such as dangerous moving machinery and unprotected heights.

(*Id.* at 27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 36).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of price marker, hand packager, and electrical assembler. (*Id.* at 37). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 38).

II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ erred in crafting the RFC because she (1) failed to properly evaluate the opinion from consultative examiner John Schwab, D.O., and (2) neglected to reconcile conflicts between the RFC and the jobs found at step five.  (Dkt. 6-1 at 1, 6-11).  The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

A.     **The RFC Determination and Evaluation of Medical Opinion Evidence**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id*., an ALJ is not a medical professional, and therefore she "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence."  *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

- 6 -

opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). When a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id*. at

§§ 404.1520c(b), 416.920c(b).  Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may—but is not required to—explain how she considered the remaining factors.  *Id*.

Dr. Schwab performed an internal medical examination of Plaintiff on March 31, 2021.  (Dkt. 5 at 972-75).  Plaintiff reported that he had worked at UPS in the sorting facility for 20 years, which resulted in pain in his low back and neck.  (*Id.* at 972).  Plaintiff also described having a torn meniscus in both knees and arthritis all over his body.  (*Id.*). Plaintiff indicated that he lives with a friend and needs some help at home, although he drives, cooks seven times a week, occasionally cleans, does laundry and shopping once a week, and showers, bathes, and dresses daily.  (*Id.* at 973).  Dr. Schwab noted that Plaintiff appeared to be in no acute distress, could walk on heels and toes without difficulty, and used no assistive devices.  (*Id.*).  Plaintiff's cervical spine and lumbar spine showed full flexion, extension, with lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.* at 974).  Dr. Schwab reviewed x-rays of Plaintiff's cervical and lumbosacral spine showing mild degenerative change in the C2-C3 and C4-C7 levels, moderate degenerative change at the T12-L1 level, and mild degenerative change at the L1-S1 level.  (*Id.*).  He diagnosed Plaintiff with arthralgia of the knees, backache, cervicalgia, morbid obesity, and tobacco abuse.  (*Id.* at 975).  Dr. Schwab opined that Plaintiff has "a marked restriction to

prolonged walking, climbing stairs and ladders. He has a mild restriction to bending, lifting, and carrying heavy objects." (*Id.*).

The ALJ explained her reasoning for finding Dr. Schwab's opinions to be unpersuasive as follows:

> Dr. Schwab's opinion is unpersuasive as it is inconsistent with a review of the medical evidence of record, which contained limited supported clinical findings and also [Plaintiff's] treatment history. The undersigned notes that his assessment of "marked restriction to prolonged walking, climbing stairs, and ladders" is also inconsistent with the results of his own examination of [Plaintiff] and the results of imaging studies. As noted above, x-rays of [Plaintiff's] lumbar spine on March 31, 2021 revealed no evidence of any acute fracture or subluxation, moderate degenerative changes at the T12-L1 level, and mild degenerative changes at the L1-S1 levels (Exhibit B4F/7). X-rays of [Plaintiff's] cervical spine on Mach 31, 2021 revealed no evidence of any acute fracture or subluxation. They revealed evidence of mild degenerative changes at the C2-C3 and C4-C7 levels (Exhibit B4F/6). The undersigned notes that though Dr. Schwab had an opportunity to review the results of these imaging studies, he did not address the significant discrepancy between his opinion and his findings on examination and the results of imaging studies.

(*Id.* at 33).

Plaintiff argues that the ALJ had "dubious reasons" for finding Dr. Schwab's opinion to be unpersuasive and that the ALJ focused on an alleged discrepancy with x-ray results without evaluating other factors that supported Dr. Schwab's opinion, including Plaintiff's arthralgia in the knees and morbid obesity. (Dkt. 6-1 at 6-7). The Court disagrees.

As an initial matter, the Court notes that the ALJ did not, as Plaintiff seems to argue, conclude that Dr. Schwab's opinion was unpersuasive solely on the basis of the discrepancy between the opinion and the x-rays of Plaintiff's cervical and lumbar spines. Plaintiff's argument omits the fact that the ALJ concluded that Dr. Schwab's opinions

conflicted not only with the x-rays, but also with Dr. Schwab's own findings on examination. (Dkt. 5 at 32-33 ("The undersigned notes that [Dr. Schwab's] assessment . . . is also inconsistent *with the results of his own examination of [Plaintiff]* and the results of imaging studies."); 33 ("[Dr. Schwab] did not address the significant discrepancy between his opinion *and his findings on examination* and the results of imaging studies." (emphasis added))). The ALJ specifically noted that Dr. Schwab's examination reflected that Plaintiff was in no acute distress, could walk on heels and toes without difficulty, had a normal stance, and tenderness bilaterally in Plaintiff's knees but with no redness, heat, swelling, or effusion. (*Id.* at 32). The ALJ also highlighted Dr. Schwab's observations that Plaintiff's strength was 5/5 in his upper and lower extremities, and that he had full range of hips, knees, and ankles bilaterally, and his cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Thus, the ALJ did not rely solely on the x-rays in assessing Dr. Schwab's conclusions and also considered the opinion's consistency with Dr. Schwab's own observations on examination.

Moreover, the ALJ also found Dr. Schwab's opinion unpersuasive for its inconsistency with the medical evidence of record, which contained limited clinical findings, as well as the inconsistency with Plaintiff's treatment history generally. (*Id.*). Throughout the decision, the ALJ highlighted the disconnect between Plaintiff's allegations and the medical evidence of record. For example, although Plaintiff initially alleged being disabled since October 14, 2014, due to back and neck problems, diabetes, high blood pressure, and knee problems, his activities of daily living included meal preparation, laundry and basic cleaning, grocery shopping, and driving. (*Id.* at 30). In

addition, the medical record did not document frequent trips to the emergency department for pain, or frequent and regular sessions of physical therapy. (*Id.*). Plaintiff was not prescribed an assistive device or brace for pain, or any narcotic-based pain medications, despite allegations of quite limiting pain. (*Id.*). The ALJ also cited to treatment records reflecting findings of no distress, normal strength and reflexes, normal vertebral alignment, and no evidence of edema in the lower legs. (*Id.* at 30-31). These were all proper considerations for the ALJ to assess in connection with her review of the medical opinion evidence.

In addition, in determining Plaintiff's RFC, the ALJ also considered the assessments of DDS consultants H. Miller, M.D., and D. Brauer, M.D., whose opinions she found to be somewhat persuasive. On April 7, 2021, and June 30, 2021, these state agency medical consultants opined that Plaintiff could occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, sit for approximately 6 hours, stand and/or walk for approximately 6 hours, and occasional stooping and climbing ladders. (*Id.* at 106-08; 132-35). The ALJ explained that she did not adopt the opinions in full because the consultants had not personally examined Plaintiff and only reviewed the medical records available at that time. (*Id.* at 34). And in finding that a more restrictive RFC was appropriate than the consultants opined, the ALJ cited to Plaintiff's hearing testimony regarding his pain and activities of daily living, including his knee pain and obesity, as well as the medical records obtained after the state agency consultants completed their review. (*Id.* at 35 ("The undersigned has taken into account [Plaintiff's] allegations of persistent back and knee pain, his obesity, and his experience of dizziness and finds that [Plaintiff]

cannot climb ladders, ropes and scaffolds and he cannot balance as defined in the DOT/SCO.  Additionally, [Plaintiff] cannot tolerate exposure to hazards, such as dangerous moving machinery and unprotected.")).   These were appropriate considerations in connection with an RFC determination.  *See Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-1344 EAW, 2020 WL 473618, at *5 (W.D.N.Y. 2020) (holding that "[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony").   Plaintiff's arguments to the contrary amount to nothing more than a disagreement with how the ALJ weighed the evidence, which is within her province to do. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19-cv-9253 (AT) (BCM), 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("[T]he reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ

where the evidence is susceptible of more than one interpretation."), *adopted*, No. 19 Civ. 9253 (AT) (BCM), 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021).

Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet his burden in this case. As such, the RFC assessment and analysis of medical opinion evidence in this case is consistent with the record and is supported by substantial evidence. Accordingly, neither reversal nor remand is warranted.

## B.   Conflict Between the VE's Testimony and the DOT

Plaintiff argues that the ALJ's step five analysis was not supported by substantial evidence because the ALJ failed to identify and resolve conflicts between the VE's testimony and the DOT. (Dkt. 6-1 at 8-11). Again, the Court disagrees.

At step five of the sequential analysis, "[t]he Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010). However, "[i]f a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Melendez v. Astrue*, 630 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (quotation omitted). Accordingly, in assessing the adequacy of the hypothetical questions posed to a VE, the Court will find error "where there was no evidence to support the assumption underlying the hypothetical." *Santos v. Astrue*, 709 F.

Supp. 2d 207, 211 (S.D.N.Y. 2010) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).

A conflict between the VE's testimony and the RFC "necessarily arises if the VE proposes a job whose duties, obligations or requirements, as described by another reliable source of job information, exceeds Plaintiff's RFC limitations." *Lance P. v. Comm'r of Soc. Sec.*, No. 21-CV-06123-FPG, 2023 WL 2573321, at *2 (W.D.N.Y. Mar. 20, 2023). Where such a conflict arises, the ALJ has an affirmative obligation to identify and resolve the apparent conflict. *Id.* ("Once a conflict between the VE's testimony and the RFC has been made apparent on the record either by reference to the DOT or common sense, the ALJ is obligated to probe the VE further, elicit a reasonable explanation for the conflict, and reconcile the conflict. . . .  If the ALJ does not so probe, then the ALJ's reliance on the VE's testimony with respect to that job is not supported by substantial evidence." (citations omitted)).  As explained by the Second Circuit:

> A 2000 Social Security Administration Policy Interpretation Ruling (the "Ruling") governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations.  Under the Ruling, the Commissioner "rel[ies] primarily on the [*Dictionary*]. . . for information about the [job's] requirements" but "may also use [vocational experts]. . . to resolve complex vocational issues."  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  If the Commissioner does consider the testimony of such experts, however, she must be alert to the possibility of "apparent unresolved conflict[s]" between the testimony and the *Dictionary*. *Id.*  In light of this possibility, the Ruling tasks the Commissioner with "an affirmative responsibility to ask about any possible conflict," *id.* at *4, and

to "elicit a reasonable explanation for [any such] conflict before relying on the [vocational expert's testimony]," *id.* at *2.

*Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 92 (2d Cir. 2019) (citation omitted).

Here, the ALJ found Plaintiff capable of light work that included only four hours of standing and/or walking, instead of the six hours generally required for light work. At the hearing, the ALJ asked the VE about the effect that the inclusion of such a restriction on standing and walking would have on the jobs identified by the VE as existing in the national economy. The VE explained that the available jobs for each of the identified positions would be reduced by approximately half. (Dkt. 5 at 69-70). The ALJ sought clarification by asking "so, you gave me representative jobs, and others do exist, albeit it would still be a somewhat eroded occupational base at light?" to which the VE responded, "[i]t's reduced at light for sure, but not—but there are positions that are definitely available." (*Id.* at 70). The ALJ noted that the DOT and SCO do not specially address exertional levels between light and sedentary and asked the VE for her expertise to support the opinion that jobs were available. (*Id.* at 71). The VE responded, "[i]t would be based on my professional experience in job placement as well as job analyses. I've seen these positions performed. But the DOT and SCO are silent to reduced sitting and standing and walking." (*Id.*).

The ALJ's inquiry of the VE satisfied her duty to resolve any potential conflicts between the representative occupations and the limitations in the RFC. *See Lisa T. v. Comm'r of Soc. Sec.*, No. 1:21-CV-469-DB, 2023 WL 203363, at *10 (W.D.N.Y. Jan. 17, 2023) (noting that regulations "require[ ] an ALJ to resolve any apparent conflicts between a VE's testimony and the DOT before relying on the VE's testimony"). The ALJ expressly acknowledged the conflict, examined the VE about it, and the VE explained that she relied

on job analysis and her own observation and knowledge as to how these particular jobs are performed to support her opinion, which provided a specific basis to reconcile any conflict. Contrary to Plaintiff's contentions, the VE's testimony was not general and conclusory but rather, was specifically addressed to the jobs identified and their requirements. This satisfied the ALJ's obligations. *Reilly v. Comm'r of Soc. Sec.*, No. 21-8-CV, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022) ("The ALJ specifically asked about both potential conflicts and the vocational expert provided explanations that included an analysis based on his own expertise and labor market surveys he conducted. . . . Accordingly, the ALJ properly relied on the vocational expert's testimony." (internal citation omitted)); *Peter L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00341, 2024 WL 150098, at *4 (W.D.N.Y. Jan. 12, 2024) ("[E]ven if a conflict existed, the ALJ fulfilled her duty to resolve it. . . . VE Fazzolari identified the potential conflict between overhead reaching and the DOT; explained that the DOT does not define reaching in terms of overhead reaching; and stated that he relied on his professional experience when identifying the jobs plaintiff could perform with a limitation on overhead reaching to the right. . . . The testimony elicited by the ALJ and the VE's explanations were sufficient to resolve any potential conflict." (internal citations omitted)).

Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's RFC would permit employment and the VE's testimony does not conflict with the conclusion that Plaintiff was able to perform the identified

occupations, inclusive of the limitation on standing and walking.  In sum, remand is not warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  June 26, 2024
      Rochester, New York